Below is an Opinion of the Court.

_____
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br>PATRICK GISLER,<br>            Debtor. | Bankruptcy Case No.<br>10-33202-elp7 |
| MICHAEL B. BATLAN, Trustee,<br>            Plaintiff,<br>   v.<br>PATRICK GISLER,<br>            Defendant. | Adversary No. 11-03106-elp<br><br>MEMORANDUM OPINION |

Plaintiff trustee filed this proceeding to determine the Chapter 7[1] bankruptcy estate's rights in two properties, Madera Ranch and Gibson Airpark, under a settlement agreement ("Agreement") entered into by debtor and the trustee prior to this adversary proceeding. At issue is each parties' right to certain proceeds from the sale of the properties.

---

[1] All chapter and section references in this Memorandum Opinion are to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

Page 1 - MEMORANDUM OPINION

Because the operative facts surrounding the two properties are sufficiently different to warrant separate discussion, this Memorandum Opinion treats each in succession, first addressing Madera Ranch, and then Gibson Airpark.[2]

I. MADERA RANCH

A. Facts

Long before debtor filed this bankruptcy case, members of debtor's family owned a ranching property consisting of two parcels in California known as Madera Ranch ("Madera Ranch"). For many years Vincent E. Gisler ("Vincent"),[3] debtor's father, owned Madera Ranch as Trustee of the Gisler Family Trust ("Family Trust"). The Family Trust conveyed a partial interest in Madera Ranch to entities that debtor and his brother, Joel Gisler ("Joel"), owned. Subsequently, but before debtor's bankruptcy filing, full legal title of the property was conveyed to Joel through a number of conveyances. The parties agree that the conveyances of Madera Ranch to Joel were to enable the Gislers to more easily partition the property or use it for alternate purposes, not to change the beneficial ownership of the property. The parties disagree, however, about who owned the beneficial interest in Madera Ranch.

---

[2] Debtor asserted five counterclaims, none of which has merit, and they will not be discussed separately. For the reasons explained below, debtor's first and second counterclaims are without merit. As to the third and fourth counterclaims, I find that debtor failed to prove fraud or breach of duty by an officer of the court. Debtor's fifth counterclaim lacks merit because Joel Gisler, not the trustee, held legal title to Madera Ranch and controlled its sale.

[3] Because debtor's father, Vincent Gisler, and debtor's brother, Joel Gisler, share the same last name, I refer to them by their first names for clarity.

Page 2 - MEMORANDUM OPINION

Seeking to resolve questions about the ownership of Madera Ranch and a number of other issues, the trustee and debtor entered into settlement negotiations that led to the Agreement. The court approved the Agreement. The parties later disagreed as to the meaning of the Agreement they reached and the trustee filed this lawsuit to resolve those disagreements.

After the trustee and debtor signed the Agreement, Joel sold Madera Ranch, placing one-third of the proceeds ($288,002.89), the amount subject to disputed ownership, in trust with the trustee, until ownership could be resolved in this adversary proceeding.

B. <u>Parties' Arguments</u>

Debtor argues that the Family Trust was the sole beneficial owner of Madera Ranch, that he has a fifty percent beneficial interest in the Family Trust, and, therefore, he is entitled to the proceeds attributable to his interest in the Family Trust. The trustee concedes that he is not generally entitled to the debtor's beneficial interest in the Family Trust. But the trustee argues that, under the Agreement, debtor relinquished debtor's claim, if any, to Madera Ranch, even if that claim arose from his interest in the Family Trust.[4] For reasons explained below, the evidence supports the trustee's position.

////

////

---

[4] The trustee also argues that Joel, debtor, and their companies were the beneficial owners of the property and the trustee is entitled to debtor's share of the proceeds. Because the dispute is resolved by interpreting the Agreement, I do not resolve the issue of who owned a beneficial interest in Madera Ranch.

Page 3 - MEMORANDUM OPINION

C.  <u>Legal Analysis</u>

   1.  <u>Overview of Methodology</u>

A settlement agreement is a contract subject to the local laws of contract construction and interpretation. <u>United Commercial Ins. Serv., Inc. v. Paymaster Corp.</u>, 962 F.2d 853, 856 (9th Cir. 1992) (applying California state law to interpret a settlement agreement). Oregon contract law uses a three-step methodology for contract interpretation. <u>Yogman v. Parrott</u>, 325 Or. 358, 361-62 (1997).

"First, the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends."[5] <u>Id.</u> at 361. A provision is ambiguous when it "reasonably can, in context, be given more than one meaning." <u>Id.</u> at 363-64 (quoting <u>Pac. First Bank v. New Morgan Park Corp.</u>, 319 Or. 342, 347-48 (1994)).

If the provision is ambiguous, the court proceeds to the second step, "examin[ing] extrinsic evidence of the contracting parties' intent" to determine the meaning of the contract. <u>Yogman</u>, 325 Or. at 363; <u>see also</u> ORS 41.740 (exception to parol evidence rule barring extrinsic evidence "to explain an ambiguity").

The third step to determine the meaning of a contract term, which is reached only "if the meaning of a contractual provision remains ambiguous

---

[5] The district court in this district has reached different conclusions about the proper role of parol evidence in this first step. <u>Compare</u> <u>Thomas v. OneWest Bank, FSB</u>, 2011 WL 3585042, *2 (D. Or. 2011) (parol evidence not considered) <u>with</u> <u>Malmquist v. OMS Nat'l Ins. Co.</u>, 2011 WL 3298900 (D. Or. 2011) (parol evidence considered). Because I find the Agreement ambiguous on its face, I need not reach this question.

Page 4 - MEMORANDUM OPINION

after the first two steps have been followed," is to rely "on appropriate maxims of construction." Yogman, 325 Or. at 364.

    2. <u>Application of Methodology</u>

        a. <u>Step One - Ambiguity</u>

The relevant portions of the Agreement provide:

> [Trustee] hereby stipulates that [debtor's] interests in the [Family Trust and other trusts] are not property of the estate . . . .

Ex. 14, p. 5, § 1(e).

> [Debtor] agrees that whatever interest in Madera Ranch is recovered by the estate shall not be subject to any claim from [debtor.]

Ex. 14 p. 5, § 2(d).

The text of these two provisions, taken together, is subject to either of two reasonable interpretations.

The Agreement could be read, as debtor urges, to reserve the question of ownership of Madera Ranch for another day. Under this interpretation, once ownership of Madera Ranch is determined, Sections 1(e) and 2(d) govern distribution of the proceeds from the property sale. To the extent the Family Trust retained a beneficial interest in Madera Ranch, Section 1(e) grants debtor his share of that interest, free of any claim from the trustee. To the extent debtor held a beneficial interest in Madera Ranch at the time he filed his bankruptcy petition, Section 2(d) grants debtor's beneficial interest to the estate, free of any claim from debtor.

Alternately, the Agreement could be read, as the trustee urges, to resolve the dispute over the Madera Ranch property in favor of the trustee. "Whatever interest" in Section 2(d) is read to mean "any

Page 5 - MEMORANDUM OPINION

interest whatever including interests, if any, held by the Family Trust."
Section 1(e) is read to encompass only Family Trust property not
otherwise treated in the Agreement.

Because the Agreement "reasonably can, in context, be given more
than one meaning," I find the agreement ambiguous.

### b. Step Two - Extrinsic Evidence

Because the Agreement is ambiguous, I proceed to step two of the
analysis: "examin[ing] extrinsic evidence of the contracting parties'
intent" to determine the Agreement's meaning. Yogman, 325 Or. at 363.
"In construing an instrument, the circumstances under which it was made,
including the situation of the subject and the parties may be shown
. . . ." ORS 42.220. Additionally, "the parties' practical construction
of an agreement may hint at their intention." Yogman, 325 Or. at 364.

The trustee argues that the extrinsic evidence shows conclusively
that debtor released to the trustee whatever interest he had in Madera
Ranch from whatever source, including the Family Trust, in exchange for
the trustee's payment of $85,000. Plaintiff's Trial Memo, p. 13.
Further, the trustee argues that, in light of the parties' negotiations,
no other interpretation is reasonable. Id. I agree.

First, the nature of the underlying disputes that led to the
Agreement supports the trustee's argument that the parties resolved the
Madera Ranch issue. At the time negotiations commenced between the
parties, a number of outstanding issues remained, some presenting
significant factual uncertainty. Both debtor's counsel and the trustee
testified to the parties' intent to reach a complete and universal
settlement in order to avoid costly litigation. Email correspondence

Page 6 - MEMORANDUM OPINION

between the parties during the negotiation period also reflects this intent. Ex. 9. Further, I find compelling the trustee's testimony that it was in response to this uncertainty that the trustee agreed to pay debtor $85,000 in exchange for debtor releasing any interest in Madera Ranch, including any interest obtained through the Family Trust, thereby avoiding costly litigation of ownership.

When examining the parties' discussions, one party's "statement and [the opposing party's] silence in response to it are circumstances underlying the formation of the contract." Batzer Constr. Inc. v. Boyer, 204 Or. App. 309, 321 (2006) (citing Stanfield v. Arnwine, 102 Or. 289, 299, (1921)). For the following reasons, I find that during the settlement negotiations, the trustee communicated his intent to resolve the disposition of Madera Ranch in the Agreement and debtor acquiesced to it.

The trustee and his counsel sent several emails expressing a desire to resolve the Madera Ranch dispute. Ex. 9. Also, the Motion and Notice of Intent to Settle, submitted to the court after the trustee provided debtor's counsel an opportunity to review it and object, stated that "the estate shall hold whatever interest Debtor has in the real property known as Madera Ranch in Madera County California free and clear of any claim by the Debtor." Ex. 15.

Debtor's counsel testified that he understood that the trustee wanted debtor's entire interest in Madera Ranch, regardless of when debtor acquired the interest and regardless of the nature of his interest. The trustee's counsel testified that debtor's counsel never communicated any intent to preserve for debtor a claim to Madera Ranch.

Page 7 - MEMORANDUM OPINION

Only in very early-stage negotiations did debtor express a desire to save resolution of the Madera Ranch issue for another day, and the trustee expressly rejected that request. After those early negotiations, the trustee repeatedly expressed his understanding that the parties were resolving through the Agreement that he, not debtor, was entitled to debtor's interest in Madera Ranch, whatever the nature of that interest might be. None of the later-stage email communications between the parties reflected a different intent on the part of debtor or suggested that debtor understood the Agreement to mean something different.

Initial drafts of the Agreement provided that debtor "will agree that whatever interest in Madera Ranch is recovered by the estate shall not be subject to a claim of exemption." Ex. 10, p. 4, § 2(d). Thereafter, at the trustee's insistence, the parties changed the provision to the form they ultimately adopted: "[Debtor] agrees that whatever interest in Madera Ranch is recovered by the estate shall not be subject to any claim from [debtor.]" Ex. 14, p. 5, § 2(d). The trustee insisted on this change, explaining that he "is purchasing whatever interest [debtor] thinks he might have, from whatever source, in Madera Ranch for the $85,000." Ex. 19, p.2. Therefore, I find that debtor's acceptance of the trustee's change signaled debtor's acceptance of the trustee's interpretation of the meaning of that change.

The parties presented scant evidence of their "practical construction" of the agreement, likely because the Agreement became controversial only a very short time after execution. However, in the final stage of negotiation, the trustee submitted to the court the Motion and Notice of Intent to Settle for the purpose of providing interested

Page 8 - MEMORANDUM OPINION

parties in the bankruptcy case the opportunity to object.  The trustee's filing of the Motion and Notice of Intent to Settle, and debtor's lack of objection to that Notice, lead me to find that the Motion and Notice reflects debtor's and the trustee's practical construction of the agreement.  The Motion and Notice reflected the trustee's interpretation of the provision.

Examining the Agreement in light of the extrinsic evidence "relat[ing] to the circumstances under which the contract was made," I find the trustee's interpretation is the correct one.  Specifically, the testimonial and documentary evidence overwhelmingly support the conclusion that the parties entered into the Agreement intending to resolve the Madera Ranch issue, and the Agreement entered into by the parties included debtor releasing to the trustee any interest he had in Madera Ranch from whatever source, including any interest acquired through the Family Trust.  Because I conclude that the second step in the analysis supports the trustee's position, I do not reach the third step in which I would apply maxims of statutory construction.

## II.   GIBSON AIRPARK

A.   <u>Facts</u>

Debtor and his father, Vincent, were among the original owners of Gibson Airpark LLC ("Gibson"), a single-purpose entity holding real property near Bend, Oregon.  The Operating Agreement of the LLC indicates that debtor owned a 37.5% membership interest and Vincent owned a 12.5% interest in the LLC.  Ex. 21, p. 1.  On Schedule K-1 of the 2008 and 2009 Gibson partnership income tax returns, debtor reported holding an

Page 9 - MEMORANDUM OPINION

Case 11-03106-elp    Doc 57    Filed 04/06/12

interest equal to the sum of his and his father's interest in Gibson.[6] Ex. 24, p. 1; Ex. 23, p. 9. In 2009, Vincent died.

In November 2011, the trustee and the other owners sold the real property owned by Gibson and distributed proceeds from the sale ("Proceeds") to the members.[7] The trustee now holds 12.5% of the Proceeds ($51,790.00), which corresponds to the amount of Vincent's original ownership share. Joint Statement of Agreed Facts, ¶ 36.

B.  Parties' Arguments

Debtor argues that he is entitled to the portion of the Proceeds attributable to Vincent's ownership share under Section 1(e) of the Agreement[8] because he acquired Vincent's Gibson interest via inheritance. The trustee argues that debtor could not have inherited Vincent's interest in Gibson because Vincent transferred his interest to debtor during Vincent's lifetime and, therefore, Section 1(e) does not apply. The trustee further argues that debtor acquired Vincent's Gibson interest pre-petition, making the Proceeds property of the estate.

C.  Legal Analysis

Resolving whether debtor or the trustee is entitled to the share of

---

[6] The 2009 tax return reflected ownership percentages debtor unilaterally adjusted as a result of a capital call allegedly responded to by only some of the members of Gibson. However, this adjustment was later reversed because the trustee, Gibson's accountant and the other co-manager concluded that the adjustment in ownership percentage made by debtor was not permitted by the Operating Agreement.

[7] The distribution of the Proceeds was made according to the original ownership percentages.

[8] In section 1(e) of the Agreement the trustee stipulated that "Trustee has no claim on Gisler's inheritance from Vincent and/or Kathryn Gisler[.]" Ex. 14, p. 5.

Page 10 - MEMORANDUM OPINION

the Gibson Proceeds attributable to the interest originally owned by Vincent turns on the factual question of whether debtor acquired Vincent's interest before or after Vincent's death. For the reasons explained below, I find that debtor acquired Vincent's interest in Gibson while Vincent was alive and not by inheritance. Therefore, under § 541(a),[9] the Proceeds are property of the estate and the trustee is entitled to them.

    Debtor testified that he was the tax matters partner of Gibson and in that role hired the accountant who prepared Gibson's 2008 partnership income tax return. As noted above, the tax return reflected on Schedule K-1 that debtor owned an interest in Gibson equal to the sum of his and his father's interest in the company. When questioned about the validity of the tax return, debtor testified that he failed to notice the change. Because I find the tax return more credible as to the ownership of Gibson than debtor's testimony that, even though he was the tax matters partner, he failed to notice the adjustment in ownership interest reflected in the return, I find that Vincent transferred his interest in Gibson to debtor in 2008 or earlier. It logically follows that Vincent transferred his interest in Gibson to debtor prior to his death in 2009, and the transfer could not have been made through inheritance. Therefore, Section 1(e) of the Agreement does not apply to Gibson and the Proceeds are property of debtor's bankruptcy estate.

////

---

    [9] Section 541(a) provides that the bankruptcy estate is comprised of all the debtor's property, wherever located and by whomever held, with certain exceptions not applicable in this dispute.

Page 11 - MEMORANDUM OPINION

CONCLUSION

The text of the Agreement, as it pertains to Madera Ranch, is ambiguous. Examination of the Agreement in light of the extrinsic evidence "relat[ing] to the circumstances under which the contract was made" reveals that the parties entered into the Agreement intending to resolve the Madera Ranch issue. Under section 2(d) of the Agreement debtor acknowledged that whatever interest he had in Madera Ranch that the trustee recovered would belong to the estate free of any claim by the debtor. The trustee is holding $288,002.89 in proceeds from the debtor's interest in Madera Ranch. Those proceeds belong to the estate under the Agreement.

Section 1(e) in the Agreement, addressing debtor's inheritance from his parents, does not apply to Gibson. Debtor received Vincent's interest in Gibson before Vincent's death, so the interest could not have been transferred by inheritance. Therefore, Section 1(e) does not apply as to Gibson and the Proceeds belong to the bankruptcy estate.

For the foregoing reasons, I will grant judgment for the trustee declaring that the trustee is entitled to the $288,002.89 in sales proceeds from the one-third interest in Madera Ranch currently held in trust and $51,790.00 in proceeds from the sale of Vincent's 12.5% interest in Gibson, free of any claim or interest of debtor. I will dismiss debtor's counterclaims.

Counsel for the trustee shall, within fourteen (14) days, lodge a judgment consistent with this Memorandum Opinion.